# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 52011

| | | |
|---|---|---|
| MAVANEE SMALLWOOD, L. DALE NICKELL, PATRICIA NICKELL-ZIMMERMAN, and THE LITTLE NICKELL RANCH, LLC, an Idaho limited liability company, | ) ) ) ) ) | Boise, October 2025 Term |
| | ) | Opinion filed: January 22, 2026 |
| Plaintiffs-Appellants, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) | |
| KENNETH LITTLE, AARON LITTLE, and COURTNEY BEARDALL, | ) ) ) | |
| Defendants-Respondents, | ) ) | |
| and | ) ) | |
| GLEN LITTLE, JOY NORSTEBON, LINDA CORESON, SHAWN CORESON, SHEA CORESON, MELINDA FOWLER, ALAN NICKELL, SHANE NICKELL, LAWRENCE NICKELL, ADAM TIMAR, JACOB KOPPLOW, MILLIKA SKAAR, JESSICA CALDERWOOD, CAMERON SMALLWOOD, KEAGAN SMALLWOOD, WADE SMALLWOOD, NATACHA LIDDLE, JACQUELINE DENISE GRIGGS, MICHELLE RENEE GRIGGS, NEYSHA QUICK, KATHRYN KOPPLOW, KAITLAN CALDERWOOD, BAYLEY BANKS, and JOHN DOES 1-3 and JANE DOES 1-3, and any unknown heirs of ARLENE NICKELL, WHITNEY LITTLE, or WINIFRED GRIGGS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Teton County. Steven W. Boyce, District Judge.

The judgment of the district court is <u>vacated</u>, its order granting summary judgment to Respondents is <u>reversed</u>, and the case is <u>remanded</u>.

Rigby, Andrus & Rigby Law, PLLC, for Appellants. Hyrum Erickson argued.

Moulton Law Office, Driggs, for Respondents. W. Forrest Fischer argued.

—————————————————————

MOELLER, Justice.

This appeal concerns the validity of limitations on the transfer of real property, otherwise known as "restraints on alienation," and the applicable statutory and common law requirements they must satisfy.

Mavanee Smallwood, L. Dale Nickell, Patricia Nickell-Zimmerman, and the Little Nickell Ranch, LLC (collectively "Appellants") filed a complaint in Teton County, Idaho, seeking a declaratory judgment quieting title to certain real property. Appellants assert that their respective deeds contain a restriction that violates the common law rule against unreasonable restraints on alienation. The restrictions at issue provide that Appellants, as grantees, "cannot . . . sell, trade, convey or encumber the property in any way during the lifetime of [the grantee], or [their] heirs now living, except a conveyance or encumbrance may be made to or in favor of [the other two parcel owners] or their heirs." This meant that, as long as any of the grantees or their heirs living at the time of the original conveyance were still alive, Appellants could only convey the property to their siblings, nephews, and nieces. However, based on the restrictions in the deeds, they could not convey it to their own spouses, children, or grandchildren. Kenneth Little, Aaron Little, and Courtney Beardall (collectively "Respondents") maintain that the restrictions are enforceable.

The district court granted summary judgment in favor of Respondents, upholding the deed restrictions as written and concluding that the common law rule against unreasonable restraints on alienation had been abrogated by the passage of Idaho Code section 55-111A. Appellants then appealed to this Court. For the following reasons, we reverse the district court's order of summary judgment and hold that (1) the common law rule against unreasonable restraints on alienation has not been abrogated in Idaho and (2) the restraints contained in the deeds in question at issue here violate that rule because they are unreasonable.

# I. FACTUAL AND PROCEDURAL BACKGROUND

The restrictions in this case concern three separate parcels of real property in Teton County, Idaho, all of which are owned by the descendants and heirs of Edith Little. The parcels are depicted below:



Figure 1: The subject properties.

The "Smallwood Property" is owned by Plaintiffs/Appellants Mavanee Smallwood, L. Dale Nickell, and Patricia Nickell-Zimmerman. The "Nickell Property" is owned by Plaintiff/Appellant The Little Nickell Ranch, LLC. The "Little Property" is owned by Defendants/Respondents Thomas Aaron Little, Kenneth C. Little, and Vivian S. Little (who is not named in the current action).

Edith Little previously owned all three properties, which consisted of a single parcel of approximately 310 acres of farmland. In 1980, she formed a partnership with her son, Whitney Little, called Edith Little Farms, LP ("Edith Little Farms"). Whitney Little was designated as the general partner. Edith Little transferred the 310-acre parcel to Edith Little Farms. In November 1993, Edith Little Farms was dissolved and the single parcel was divided into three parcels, which were transferred to Edith's three children: Winifred Griggs, Arlene Nickell, and Whitney Little. The Smallwood Property, totaling approximately 100 acres, was conveyed to Winifred Griggs; the Nickell Property, totaling approximately 60 acres, was conveyed to Arlene Nickell; and the Little Property, totaling approximately 150 acres, was conveyed to Whitney Little. *See* Figure 1, *supra*.

The grant deeds conveying the three parcels contained nearly identical restrictions on alienation ("the Restrictions"):

> SUBJECT to the express condition that the said [grantee] and [their] heirs cannot and shall not sell, trade, convey or encumber the property in any way during the lifetime of [the grantee], or [their] heirs now living, except a conveyance or encumbrance may be made to or in favor of [the other two parcel owners] or their heirs.

In other words, the grantees were restricted from selling, trading, conveying, or in any way encumbering the properties during the grantees' lifetimes to anyone, including their own children and grandchildren, who were living at the time of the transfer in 1993. The only exception to this restriction is that the parcel may be conveyed or encumbered in favor of one of Edith Little's other two children or their heirs. Thus, both sides agree on the meaning of the Restrictions: as long as the grantees and their heirs living at the time of original conveyance in 1993 are still alive, the grantees can only convey the property to their siblings, nephews, and nieces, but not to their own spouses, children, or grandchildren.

Over the following years, the grantees appear to have largely ignored the restrictions and conveyed the properties to their spouses and lineal descendants. The following is a summary of the relevant title history for each parcel:

- **The Smallwood Property (Winifred Griggs)**

  When Winifred Griggs died, her estate's personal representative transferred the property to Winifred's husband, Alfred R. Griggs, who then conveyed the property to his trust, the Alfred R. Griggs Trust, in 2003. In 2012, the trustee of the trust transferred the property to Winifred's children, Mavanee Smallwood, Natacha Liddle, and Neysha Quick, who are the current owners.

- **The Nickell Property (Arlene Nickell)**

  In 1993, Arlene Nickell transferred the land to the Stanton D. and Arlene Nickell Revocable Trust. After Stanton D. Nickell and Arlene Nickell died in 2003 and 2017, respectively, the co-trustees, their children, Dale Nickell and Patricia Nickell-Zimmerman, conveyed the property to The Little Nickell Ranch, LLC in 2019. This is the current owner.

- **The Little Property (Whitney Little)**

  Upon receipt of the land, Whitney Little conveyed a community property interest in the property to his wife, Wanda Little. In 2013, they conveyed the property to their son

4

and daughter-in-law, Kenneth and Vivian Little. In 2019, Kenneth and Vivian Little transferred the property to themselves and their son, Thomas Aaron Little, via quitclaim deed as joint tenants in common with a right of survivorship.

Appellants filed suit against Respondents and 23 other individuals having "an interest in the unreasonable restraints on alienation to which their properties are subject." Their complaint asked the district court to (1) quiet title to the properties in their possession and (2) issue a declaratory judgment that the restrictions in the grant deeds were unreasonable restraints on alienation and void as against public policy. Specifically, they alleged that the Smallwood property and the Nickell property were subject to an unreasonable restraint on alienation. Respondents (Aaron Little, Kenneth Little, and Courtney Beardall)[1] filed an answer and raised five affirmative defenses: failure to state a claim upon which relief can be granted; failure to join a necessary party under Rule 19 of the Idaho Rules of Civil Procedure; statute of limitations; failure to take reasonable steps to mitigate claims of damages; and laches. Appellants then filed a Motion for Default against the 23 remaining named defendants, as well as all the unnamed defendants, for failure to file an answer or otherwise appear. The district court entered a default as to these defendants.

Respondents filed a motion for summary judgment in June 2023, alleging that the Restrictions were not void as against public policy and were valid under the durational requirements of Idaho Code section 55-111A(1). Appellants filed a cross motion for summary judgment in July 2023, arguing that there is no genuine dispute of material fact and the restraints in the deeds are unreasonable restraints on alienation as a matter of law. They did not contest that the deeds met the durational requirements of section 55-111A. However, they asserted that, even though section 55-111 abrogated Idaho's common law rule against perpetuities,[2] the Restrictions violated a different common law rule: the rule against unreasonable restraints on alienation.

After the motions were heard by the district court, it granted Respondents' Motion for Summary Judgment and denied Appellants' Motion for Summary Judgment. The district court also set aside the order defaulting the defendants who did not appear or answer. After finding that the

---

[1] Although Courtney Beardall's name is contained in the caption, the record is otherwise silent regarding Beardall's participation or interest in this claim.

[2] The rule against perpetuities is a "common-law rule prohibiting a grant of an estate unless the interest must vest, if at all, no later than 21 years (plus a period of gestation to cover a posthumous birth) after the death of some person alive when the interest was created." *Rule Against Perpetuities*, Black's Law Dictionary (12th ed. 2024).

language in the grant deeds was unambiguous, the district court concluded that Idaho Code section 55-111 abrogated the common law rule against unreasonable restraints on alienation. The district court entered a final judgment in Respondents' favor on March 4, 2024. Appellants timely appealed.

## II.    STANDARDS OF REVIEW

"When this Court reviews a district court's decision on summary judgment, we apply the same standard used by the district court." *S. Hill Meat Lockers Inc. v. Idaho Transp. Dep't*, ___ Idaho ___, ___, 573 P.3d 151, 160 (2025). " '[S]ummary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Id.* (alteration in original) (quoting *Moyer v. Doug Lasher Constr. Inc.*, 174 Idaho 967, 973, 560 P.3d 1114, 1120 (2024)). Upon review, the Court must "liberally construe the facts, and draw all reasonable inferences in favor of the nonmoving party." *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012). To create a genuine issue of material fact, there must be more than a mere scintilla of evidence or slight doubt but instead must be evidence upon which a jury may rely. *Id.* (citing *Corbridge v. Clark Equip. Co.*, 112 Idaho 85, 87, 730 P.2d 1005, 1007 (1986)).

If there are no genuine issues of material fact, the issue is a question of law over which this Court exercises free review. *Hastings v. Idaho Dep't of Water Res.*, 173 Idaho 704, 710–11, 547 P.3d 1190, 1196–97 (2024) (citation omitted). "Accordingly, summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Wurdemann v. State*, 174 Idaho 368, 371, 555 P.3d 183, 186 (2024) (citation modified).

## III.    ANALYSIS

Because the material facts in this matter are largely undisputed, we are confronted with a pure issue of law—one requiring the consideration of both statutory law and common law. The statutes at issue in this case were enacted by the Idaho Legislature in the 1950s and modified over the years, while the common law principles applicable to this case were first recognized in England as early as 1290 and began to be more widely enforced by the English courts in the 15th century. Michael D. Kirby, *Restraints on Alienation: Placing A 13th Century Doctrine in 21st Century Perspective*, 40 Baylor L. Rev. 413, 414–15 (1988). Therefore, to resolve this current problem, we must address these controlling legal precepts, both old and ancient.

6

**A. Idaho Code sections 55-111 and 55-111A did not abrogate the common law rule against unreasonable restraints on alienation.**

There are two statutes at issue in this case. The first, Idaho Code section 55-111, expressly abolishes the common law rule against perpetuities in Idaho: "There shall be no rule against perpetuities applicable to real or personal property." I.C. § 55-111. The second, Idaho Code section 55-111A, replaces the rule against perpetuities and provides a durational limitation for how long the alienation of property can be limited or conditioned. It states, in part: "The absolute power of alienation of property cannot be suspended by any limitation or condition whatever, for a longer permissible period than during the continuance of the lives of the persons in being at the creation of the limitation or condition, and twenty-five (25) years thereafter." I.C. § 55-111A(1).

The district court concluded, and Respondents agree, that these statutes were intended to provide complete governance on all restraints on alienation, thereby not only abrogating the common law rule against perpetuities, but also, by implication, the common law rule against unreasonable restraints on alienation. Appellants disagree, contending that these statutes only abrogated the common law rule against perpetuities, thereby leaving the common law rule against unreasonable restraints intact. For the following reasons, we hold that Idaho Code sections 55-111 and 55-111A did not abrogate the common law rule against unreasonable restraints on alienation.

Our standard of review requires us to engage in a de novo assessment of the applicable statutes. This Court applies the following principles when engaging in statutory interpretation:

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 310, 208 P.3d 289, 292 (2009), *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 265 P.3d 502 (2011). Further, this Court has recognized that "[w]here the clear implication of a legislative act is to change the common law rule [this Court] recognize[s] the modification because the legislature has the power to abrogate the common law." *McCann v. McCann*, 152 Idaho 809, 818, 275 P.3d 824, 833 (2012) (quoting *Baker v. Ore-Ida Foods, Inc.*, 95 Idaho 575, 583, 513 P.2d 627, 635 (1973)).

Generally, "the rules of common law are not to be changed by doubtful implication. However, where the implication is obvious it cannot be ignored." *Mickelsen v. Broadway Ford, Inc.*, 153 Idaho 149, 153, 280 P.3d 176, 180 (2012) (quoting *Statewide Constr., Inc. v. Pietri*, 150 Idaho 423, 429, 247 P.3d 650, 656 (2011), *abrogated on other grounds by Verska*, 151 Idaho 889, 265 P.3d 502). Importantly, "[n]o statute is to be construed as altering the common law farther than its words and circumstances import." *Moon v. Bullock*, 65 Idaho 594, 607, 151 P.2d 765, 771 (1944), *superseded on other grounds by statute*, Act of Feb. 14, 1949, ch. 47, 1947 Idaho Sess. Laws 82, *as recognized in Doggett v. Boiler Eng'g & Supply Co.*, 93 Idaho 888, 477 P.2d 511 (1970).

The plain language of Idaho Code section 55-111 expressly abrogates the rule against perpetuities. I.C. § 55-111 ("There shall be no rule against perpetuities applicable to real or personal property."). Idaho Code section 55-111A replaces it with a statutory rule of the legislature's own making. The text of section 55-111A focuses on the temporal concepts typically associated with the rule against perpetuities, such as "lives of the persons in being," and does away with the presumption that "a person is capable of having children at any stage of adult life." *See* Restatement (First) of Property § 374 (1944). The references to those concepts in section 55-111A demonstrate that the legislature intended to modify the historic rule against perpetuities and replace it with its own rule. Critically, neither section 55-111 nor section 55-111A contain language expressly abrogating any other common law rule, including the rule against unreasonable restraints on alienation.

As demonstrated by section 55-111, the legislature knows how to abrogate the common law when it intends to do so. Thus, if it had intended to abrogate the rule against unreasonable restraints on alienation along with the rule against perpetuities, it easily could have done so. Instead, neither statute contains any mention of the rule against unreasonable restraints on alienation. Therefore, after reviewing the text of sections 55-111 and 55-111A, we cannot discern an abrogation of the rule against unreasonable restraints on alienation by obvious implication in either. *See Mickelsen*, 153 Idaho at 153, 280 P.3d at 180.

As previously noted, we have long held "[i]t is not to be presumed that the [l]egislature intended to abrogate or modify a rule of the common law by the enactment of a statute upon the same subject; it is rather to be presumed that no change in the common law was intended, unless the language employed clearly indicates such an intention." *Cox v. St. Anthony Bank & Tr. Co.*, 41

Idaho 776, 779, 242 P. 785, 785 (1925); *see also McCann*, 152 Idaho at 818, 275 P.3d at 833. For the reasons discussed above, we conclude that it is not at all apparent that the legislature intended to abolish the rule against unreasonable restraints. Such an intent is neither expressed nor can it be "clearly" inferred from the language of the statute. *See id*. Therefore, we must conclude that any doubt is weighed against abrogation of the common law and hold that the common law rule against unreasonable restraints on alienation still stands in Idaho.

Despite Respondents' arguments and the district court's ruling to the contrary, this conclusion is consistent with our holding in *Locklear v. Tucker*, 69 Idaho 84, 203 P.2d 380 (1949). The issue in *Locklear* related to an option contract for a right of first refusal. The Locklears contended that the option contract violated the rule against perpetuities. *Id.* at 91, 203 P.2d at 384. The Tuckers noted that the common law rule against perpetuities had not been abrogated by the statute. *Id.* Thus, they asserted that, while the option contract did not violate Idaho Code section 54-111 (now section 55-111A), it violated the common law rule. *Id.* at 93, 203 P.2d at 386. This Court disagreed, reasoning that the statute is "a complete system governing alienation of real property," which abrogated the common law rule against perpetuities. *Id.* Based on this language from *Locklear*, Respondents argue that we have already decided that the common law rule against unreasonable restraints on alienation no longer exists. The district court agreed with the Respondents, concluding that the *Locklear* Court's statement constituted a holding that the previous iteration of Idaho Code section 55-111 effectively abrogated *all* common law rules related to real property alienation.

We disagree that such a sweeping conclusion can be drawn from that lone statement in our opinion in *Locklear*. First, it is notable that, since *Locklear* was decided in 1949, there have been several changes to Idaho Code section 55-111, including amendments in 1957 and 2008, making *Locklear*'s interpretation of the earlier statute of limited persuasive value. Act of Feb. 20, 1957, ch. 54 § 1, 1957 Idaho Sess. Laws 92, 92–93; Act of Mar. 11, 2008, ch. 77, § 1, 2008 Idaho Sess. Laws 204, 204–05. Second, the Court's statement regarding a "complete system" must be understood in context. The *Locklear* Court was addressing whether the statutory provision supplanted the common law rule against perpetuities, not whether the statute also supplanted the common law rule against unreasonable restraints on alienation. When considered in the context of the legal issue presented on appeal, we conclude that the Court's use of the phrase "complete system" in *Locklear* only referred to the legislature's decision to abrogate the common law rule

9

against perpetuities and substitute its own rule. Indeed, the Court drew a distinction between the statutory rule and the common law rule, emphasizing that the statute "does not insist upon the vesting of estates but only upon their alienability." *Locklear*, 69 Idaho at 93, 203 P.2d at 386.

Reading *Locklear* in full confirms that the "complete system" language was limited to the rule against perpetuities and does not extend to the separate and distinct common law rule against unreasonable restraints on alienation. Thus, we conclude that the district court erred as a matter of law in granting summary judgment to Respondents on that basis.

**B. The Restrictions in the deeds at issue violate the rule against unreasonable restraints on alienation.**

Having determined that the common law rule against unreasonable restraints on alienation remains in effect in Idaho, we now turn to whether the Restrictions contained in the three grant deeds are unreasonable. As a reminder, all three deeds contain a near identical restriction:

> SUBJECT to the express condition that the said [grantee] and [their] heirs cannot and shall not sell, trade, convey or encumber the property in any way during the lifetime of [the grantee], or [their] heirs now living, except a conveyance or encumbrance may be made to or in favor of [the other two parcel owners] or their heirs.

In other words, the parcel owners are restricted from selling, trading, conveying, or encumbering their property to anyone except their siblings and their heirs. The parties agree that this effectively bars the grantees from conveying the property to their spouses and lineal descendants until after the grantees—and their heirs living in 1993—are all deceased.

Appellants contend that the Restrictions contained in each of the three deeds amount to an unreasonable restraint on alienation in violation of common law principles still in effect in Idaho. This Court has adopted the view of the Restatement (First) of Property in defining such a restraint:

> A restraint on alienation, as that phrase is used in this Restatement, is an attempt by an otherwise effective conveyance or contract to cause a later conveyance
>
> > (a) to be void; or
> >
> > (b) to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or
> >
> > (c) to terminate or subject to termination all or a part of the property interest conveyed.

*Lake v. Equitable Sav. & Loan Ass'n*, 105 Idaho 923, 925, 674 P.2d 419, 421 (1983) (quoting Restatement (First) of Property § 404(1) (1944)). Restraints on alienation are not favored under

Idaho law and are interpreted strictly against the restricting party. *Funk v. Funk*, 102 Idaho 521, 524, 633 P.2d 586, 589 (1981).

At common law, restraints on alienation were disfavored because the power to transfer property was understood to be a fundamental stick in the bundle of property rights. The eminent English legal scholar, William Blackstone, observed that "[t]he third absolute right, inherent in every Englishman, is that of property: which consists in the free use, enjoyment, and *disposal* of all his acquisitions, without any control or diminution, save only by the laws of the land." 1 William Blackstone, *Commentaries* \*83 (1766) (emphasis added). This same principle was the impetus for the development of the common law rule against unreasonable restraints in even earlier times. In the 1400s, Judge Littleton stated that an absolute restraint on alienation is void as it is "against reason." Thomas Littleton, *Littleton's Tenures in English*, § 360 (Eugene Wambaugh ed., 1903); *see also Coke Upon Littleton* § 206b (Thomas Coventry ed., 1830) (declaring absolute restraints as "repugnant and against law"). This hostility to restraints on alienation carried over into early American common law, as courts began to void restraints that unreasonably restricted alienation. One of the earliest recognitions of the common law rule in the United States was in *De Peyster v. Michael*, where the court held that a lessor's requirement of the lessee to pay him a quarter of any purchase price was an invalid restraint. 6 N.Y. 467 (1852). A modern formulation of the common law rule against unreasonable restraints is found in the Restatement (Third) of Property (Servitudes) § 3.4 (2000): "A servitude that imposes a direct restraint on alienation of the burdened estate is invalid if the restraint is unreasonable."

We have not previously had the opportunity to consider the standard for determining the reasonableness of a restraint on alienation in Idaho. Today, we adopt the Third Restatement's approach, which states that "[r]easonableness is determined by weighing the utility of the restraint against the injurious consequences of enforcing the restraint." Restatement (Third) of Property (Servitudes) § 3.4 (2000). This approach reflects the historic practice in Idaho, as well as longstanding common law principles, and allows a court to equitably balance the purpose of the restraint with its consequences as written, especially where there are irrational, illegal, impractical, or unintended consequences, as in this case. A litigant invoking the rule against unreasonable restraints on alienation bears the burden of demonstrating unreasonableness. *Funk*, 102 Idaho at 524, 633 P.2d at 589.

11

Here, because there is no evidence in the record concerning the intent behind the restriction, we are left to divine its intent as best we can from the circumstances in the record. In a broad sense, these Restrictions appear to serve a legitimate purpose of preserving the property within the family for at least the lifetime of one generation. However, any utility in this restraint is outweighed by the injurious consequences the Restrictions create for the grantees and their families due to the inartful—and likely unintentional—wording of the restraint. For one, any utility of keeping the property in the family is not fully effectuated by the language of the Restrictions. The Restrictions allow the parcel owners to convey the land to their siblings or their siblings' heirs, but not to their own children and heirs. Conversely, the Restrictions do not bind the extended family members to whom the property may be properly transferred in the same manner as it binds the grantees' direct descendants. For example, if Winifred Griggs had conveyed her property to Arlene Nickell, Arlene would then have held the property free of the Restriction and could have conveyed it to *anyone* of her choosing. The unfortunate reality is that, although the parcel owners are restricted from freely conveying their land to their own children, or grandchildren while they are still alive, they can circumvent the restriction by first transferring the property to a sympathetic intermediary—such as a cousin or aunt—who would then transfer it to the grantee's child or grandchild. Once so conveyed, the property would no longer be subject to any restriction that would keep it in the family, thereby undermining the purpose of the restriction.

Furthermore, the Restrictions, as written, are counterproductive in that they prevent the parcel owners from realizing the full enjoyment and economic benefit of their land. Because the Restrictions prevent *any* encumbrance of the land, the owners are unable to obtain an operating loan or secure other financing to allow them to farm, ranch, or improve the land so that they can make a living off it or continue to live on it. It is unreasonable to expect a farmer or rancher to manage the land without the ability to secure financing. Presumably, the owners cannot even lease the land to someone else to farm or ranch, since leasing is a type of conveyance or encumbrance that is prohibited by the Restrictions. *See Intermountain Realty Co. v. Allen*, 60 Idaho 228, 232, 90 P.2d 704, 705 (1939) ("It is the settled law of this state that a lease of real property is a conveyance or encumbrance of real estate.").

Overall, we conclude that the Restrictions are unreasonable for two reasons. First, the purpose of the Restrictions, which as best we can discern from the record is to keep the land within the immediate family, is not accomplished based on how they were drafted. Second, the

Restrictions unreasonably hinder the recipients from beneficially using their land, which is contrary to "Idaho['s] public policy favor[ing] the full use of lands . . . ." *Easterling v. Clark*, ___ Idaho ___, 574 P.3d 349, 361 (2025) (quoting *Backman v. Lawrence*, 147 Idaho 390, 394, 210 P.3d 75, 79 (2009)). We hold as a matter of law that the Restrictions over the Smallwood, Nickell, and Little properties constitute unreasonable restraints on alienation in derogation of the common law of Idaho. Accordingly, we conclude the district court erred in granting summary judgment to Respondents.

## IV.    CONCLUSION

For the reasons stated above, we hold that the common law rule against unreasonable restraints on alienation was not abrogated by Idaho Code section 55-111A and, therefore, is still applicable in Idaho. Further, we conclude as a matter of law that the Restrictions on the deeds at issue are unreasonable restraints on alienation. Therefore, we vacate the district court's final judgment, reverse the district court's order granting summary judgment to Respondents, and remand for further proceedings consistent with this opinion. Costs are awarded to Appellants as the prevailing party pursuant to Idaho Appellate Rule 40(a) as a matter of course.

Chief Justice BEVAN, Justices BRODY, ZAHN, and MEYER CONCUR.